IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF GEOLOCATION INFORMATION FOR SPRINT CELLULAR TELEPHONE ASSIGNED CALL NUMBER (304) 444-0148 | Case No. 2:21-mj-00043<br><br>Filed Under Seal |

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

STATE OF WEST VIRGINIA

COUNTY OF KANAWHA, to-wit:

I, David Bullard, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (304) 444-0148 (TARGET CELL PHONE), with listed subscriber "Jaquan WRIGHT (WRIGHT), 608 Ruffner Avenue, Apt. 1, Charleston, WV 25311" and whose service provider is Sprint, a wireless telephone service provider. This application seeks authorization to obtain the requested geolocation data for a period of 30 days. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.     Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. §§ 3127(3) and (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§

3121-27. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3.      I am currently employed as a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since December 2013.

4.      I graduated from a ten (10) week criminal investigator-training course at the Federal Law Enforcement Training Center, where the course of study dealt with basic criminal investigation techniques.   In addition, I graduated from the twelve (12) week ATF National Academy, where a portion of the course of study dealt with violations of federal firearms laws, federal explosives laws, bomb scene investigations and arson investigations.

5.      I am currently assigned to ATF's Charleston, West Virginia, Field Office.  I have investigated cases involving firearms related offenses; arson; crimes of violence; crimes involving individuals conspiring to violate a number of federal statutes involving the use of firearms to commit criminal acts; the illegal sale, possession, and use of firearms during the commission of these criminal acts; as well as the use, sale, and possession of illegal controlled substances.  I have dealt with possession of illegal firearms and the trafficking of assorted controlled substances.  I have purchased controlled substances and firearms utilizing cooperating individuals in controlled buy situations.   I am familiar with the appearance, packaging, paraphernalia, and distribution of Cocaine (HCL), Crack, Heroine, Marijuana, LSD, Pharmaceuticals, Methamphetamines and other commonly used street drugs.  I am also familiar with several tactics utilized by firearms traffickers, and illegal possessors of firearms, to distribute, acquire, maintain, and possess illegal firearms.

6.      I have participated in the debriefing of defendants, witnesses, and informants, during which time I have discussed with them their methods of drug smuggling, distribution,

packaging, trafficking, avoiding law enforcement, and laundering proceeds, among other concerns related to drug trafficking. I have discussed and learned from other law enforcement investigators about these matters as well.

7. Based on my training, experience, and conversations with other experienced narcotics investigators, I have gained experience in the techniques and methods used by drug traffickers to distribute controlled substances, their use of cellular phones and other electronic communication devices to facilitate their trafficking activity, and the methods used to conceal and launder the proceeds of said activity.

8. I have participated in federal Title III investigations and have gained experience in those investigations involving the interception of wire communications. I have been involved in the review and deciphering of intercepted coded conversations between narcotics traffickers that were later corroborated by surveillance. Throughout my law enforcement career, I have spoken with, worked with, and gained knowledge from numerous experienced federal, state, and local narcotics officers about drug traffickers and their use of cell phones to facilitate drug trafficking by, for example, using code during their conversations.

9. I have obtained the facts set forth in this affidavit through my personal participation in the investigation, from oral and written reports of other law enforcement officers, from records, documents, and other evidence obtained during this investigation, and from other sources of information as referenced herein. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

10. Based on the facts set forth in this affidavit, there is probable cause to believe that WRIGHT has committed violations of 18 U.S.C. §§ 922(g)(8) and 924(a)(2). Further, the

3

location information described in Attachment B will assist investigators in locating WRIGHT to effect his arrest.

11.    The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

12.    The ATF is currently conducting a criminal investigation of WRIGHT and a federal arrest warrant has been issued in the Southern District of West Virginia, Case No. 2:21-mj-00025, for his arrest for violations of 18 U.S.C. §§ 922(g)(8) and 924(a)(2).

13.    The TARGET CELL PHONE was intercepted during a T-III investigation being conducted by the Drug Enforcement Administration (DEA) and the ATF. The DEA has tolls as of February 2, 2021, which indicate WRIGHT is still using the TARGET CELL PHONE. Special Agents (SA) and Task Force Officers (TFO) with the ATF & DEA have been conducting surveillance of WRIGHT daily since January 25, 2021. Throughout this time, SAs & TFOs have observed WRIGHT at his residence of 619 Simms Street, Charleston, West Virginia 25302. However, on February 5, 2021, TFO Adam Aldridge observed WRIGHT posting several photos to Snapchat, a multimedia messaging app, which showed WRIGHT to be in Buffalo, New York. Based on these posts, investigators believe that WRIGHT has left the Southern District of West Virginia and is now somewhere in or near Buffalo, New York.

14.    Based on my training and experience, a court order to obtain precision location information on the TARGET CELL PHONE will assist investigators in locating WRIGHT to effect his arrest.

4

15.     In my training and experience, I have learned that Sprint is a company that provides cellular telephone access to the public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data is typically less precise than E-911 Phase II data.

16.     Based on my training and experience, I know that Sprint can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Sprint's network or with such other reference points as may be reasonably available.

17.     Based on my training and experience, I know that Sprint can collect cell-site data about the Target Cell Phone.  Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower

to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as Sprint typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

18.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

19.     I further request, pursuant to 18 U.S.C. § 3103a(b)(1) and Federal Rule of Criminal Procedure 41(f)(3), that the Court find that any notice required or may be required be delayed because immediate notification may result in WRIGHT or others fleeing from prosecution, destroying or tampering with evidence, or otherwise seriously jeopardizing the investigation as set forth in 18 U.S.C. § 2705(a) (2). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication as defined in 18 U.S.C. § 2510 or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

20.     I further request that the Court direct Sprint to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Sprint. I also request that the Court direct Sprint to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the Target Cell Phone on

Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

21. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

22. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

David Bullard
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)

Subscribed and sworn to by the affiant telephonically in accordance with the procedures of Rule 4.1 this __9th__ day of February 2021.

DWANE L. TINSLEY
UNITED STATES MAGISTRATE JUDGE

7

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number (304) 444-0148, with listed subscriber "Jaquan WRIGHT, 608 Ruffner Ave, Apt. 1, Charleston, WV 25311."

2. Records and information associated with the Target Cell Phone that are within the possession, custody, or control of Sprint.

## ATTACHMENT B

### Particular Thing to be Seized

#### I. Information to be Disclosed by the Provider

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty (30) days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Sprint, Sprint is required to disclose the Location Information to the government. In addition, Sprint must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the Target Cell Phone on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to Be Seized by the Government

All information described above in Section I.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.